UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH KING,<br><br>      Plaintiff,<br><br>-against-<br><br>TENGASCO, INC., PETER E. SALAS,<br>MATTHEW K. BEHRENT, RICHARD<br>THON, and MICHAEL J. RUGEN,<br><br>      Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

  Plaintiff, Sarah King ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

  1.  This is an action brought by Plaintiff against Tengasco, Inc. ("TGC" or the "Company"), TGC Chief Executive Officer ("CEO") Michael J. Rugen ("Rugen"), and the members of TGC's board of directors (collectively referred to as the "Board" and with Rugen, the "Individual Defendants" and, all together with TGC, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger between TGC and Riley Exploration – Permian, LLC ("REP") (the "Proposed Merger"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

  2.  On October 21, 2020, TGC and REP entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which each common unit of REP issued and

1

outstanding immediately prior to the effective time of the Proposed Merger will be converted into the right to receive: (a) 97.796467 shares of TGC common stock and (b) any dividends or other distributions to which the holder of REP units becomes entitled to upon the surrender of such REP units in accordance with the Merger Agreement (the "Merger Consideration"). Based on the number of REP units and shares of TGC common stock outstanding as of October 20, 2020, TGC will issue approximately 203 million shares of TGC common stock to REP members representing total aggregate consideration of approximately $197 million. Upon completion of the Proposed Merger, former REP members will collectively own approximately 95% and former TGC stockholders will own approximately 5% of the outstanding shares of common stock of the post-merger Combined Company. The Combined Company will be renamed Riley Exploration Permian, Inc. and its stock will continue to trade on the New York Stock Exchange under the ticker symbol "REPX."

3. On November 12, 2020, in order to solicit TGC shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement/prospectus on Form S-4 (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for TGC, REP, and the pro forma combined company; (ii) the valuation analyses performed by TGC's financial advisor, Roth Capital Partners, LLC ("Roth"), in support of its fairness opinion; and (iii) the sales process leading up to the Proposed Merger.

5. The special meeting of TGC shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been

omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise her corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to TGC's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum

contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, TGC's common stock trades on New York Stock Exchange, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Plaintiff is, and at all relevant times has been, a shareholder of TGC.

12. Defendant TGC is an oil and gas company incorporated under the laws of the State of Delaware that explores for, develops, and produces domestic oil and natural gas reserves focused in the State of Kansas. TGC's common stock trades on the NYSE under the ticker symbol "TGC".

13. Individual Defendant Peter E. Salas is, and has been at all relevant times, the Chairman of the TGC Board of Directors.

14. Individual Defendant Matthew K. Behrent is, and has been at all relevant times, a director of TGC.

15. Individual Defendant Richard Thon is, and has been at all relevant times, a director of TGC.

16. Individual Defendant Michael J. Rugen is, and has been at all relevant times, Chief Financial Officer and Chief Executive Officer of TGC.

17. The Individual Defendants referred to in ¶¶ 13-16 are collectively referred to herein as the "Individual Defendants" and with TGC they are referred to herein as the "Defendants."

4

## SUBSTANTIVE ALLEGATIONS

### I. Background and the Proposed Merger

18. TGC, is engaged in the business of exploration for and production of oil and natural gas. The Company's area of oil exploration and production is in Kansas. The Company's subsidiary, Manufactured Methane Corporation (MMC) operates treatment and delivery facilities in Church Hill, Tennessee, for the extraction of methane gas from a landfill for eventual sale as natural gas and for the generation of electricity. The principal markets for the Company's crude oil are local refining companies. The Company holds a working interest in over 210 gross wells. The Company's operated properties in Kansas are located in central Kansas and include approximately 180 producing oil wells, approximately 30 shut-in wells and approximately 40 active disposal wells (the Kansas Properties). The Company maintains a working interest in most of its wells and undrilled acreage in Kansas. The terms for most of the Company's leases in Kansas range from 3 to 5 years.

19. REP is a private equity backed company focused on developing conventional oil and natural gas properties in the Northwest Shelf of the Permian Basin. REP was formed with the goal of building a premier Permian Basin pure-play acquisition, exploration, and development company, focusing on oil-rich, geologically driven sweet spots within legacy oilfields that are conducive to newer drilling and completion techniques. REP's acreage is primarily located on large contiguous blocks in Yoakum County, Texas and Lea, Roosevelt and Chaves Counties in New Mexico; and the offset legacy assets are located in the Permian Basin San Andres fields, which include the Wasson and Brahaney Fields.

20. On October 21, 2020, TGC and REP issued a joint press release announcing the Proposed Merger, which states in relevant part:

### TENGASCO, INC. AND RILEY EXPLORATION-PERMIAN, LLC ANNOUNCE MERGER AGREEMENT

GREENWOOD VILLAGE, Colorado and OKLAHOMA CITY, Oklahoma, October 21, 2020—Tengasco Inc. (NYSE American: TGC) ("Tengasco") and Riley Exploration – Permian, LLC ("Riley") announced today that they have entered into a definitive merger agreement in an all-stock transaction. Under the terms of the merger agreement, Tengasco will issue approximately 203 million shares of Tengasco common stock to Riley members at the closing of the transaction. Following the closing of the transaction, the current members of Riley will own 95% of Tengasco and the current Tengasco stockholders will own the remaining 5%. In addition, Riley will become a wholly owned subsidiary of Tengasco.

Riley is a private equity backed company focused on developing conventional oil and natural gas properties in the Northwest Shelf of the Permian Basin. Riley was formed with the goal of building a premier Permian Basin pure-play acquisition, exploration, and development company, focusing on oil-rich, geologically driven sweet spots within legacy oilfields that are conducive to newer drilling and completion techniques. Riley's acreage is primarily located on large contiguous blocks in Yoakum County, Texas and Lea, Roosevelt and Chaves Counties in New Mexico; and the offset legacy assets are located in the Permian Basin San Andres fields, which include the Wasson and Brahaney Fields.

Riley's assets have a shallower decline profile than most unconventional reservoirs, which provides Riley with optionality in terms of capital deployment, development schedule, and management of organic growth. As a result, Riley has a strong balance sheet with a low debt to trailing twelve months Adjusted EBITDAX ratio of 1.4:1, has been able to grow production quarter over quarter, and has a record of paying cash dividends to common unitholders for the past 6 quarters totaling $25 million to date.

**Key facts related to Riley's assets and operations include:**

• Organic Growth - Long-lived oil-weighted production growth.

• Focus on Returns - Free cash flow and history of dividend payments.

• Lean Balance Sheet - Low debt profile of less than 1.4 x Debt / TTM Adjusted EBITDAX.

• Riley's estimated total proved, probable and possible reserves at September 30, 2019 based on a third-party reservoir engineer report were approximately 54,803, 60,580 and 8,926 MBoe, respectively.

• Nine months ended June 30, 2020 average daily production of 7,073 Net Boe/d

(81% oil, 10% Natural Gas and 9% NGLs).

• Management team has a total of over 100 years of collective oil and gas experience, including significant experience in horizontal drilling in the Northwest Shelf of the Permian Basin.

• 44,880 net acres as of June 30, 2020.

**At the consummation of the merger, the following is expected to occur:**

• Tengasco will change its name to Riley Exploration Permian, Inc.

• Tengasco's common stock will continue to trade on the NYSE American, but under a new symbol, expected to be "REPX."

• Current management of Riley will become the management of Tengasco with Bobby Riley serving as CEO and Kevin Riley as President. Michael Rugen, the interim CEO and the CFO of Tengasco will continue as CFO of Tengasco.

• The corporate office will be relocated to Riley's current office in Oklahoma City, OK.

• We anticipate reverse stock split in a range from 8-to-1 to 12-to-1 will be completed following closing.

• The Board of Directors of Tengasco will consist of:

• Bobby Riley – Chairman of the Board and Chief Executive Officer
• Bryan Lawrence – Non-Employee Director
• Philip Riley – Non-Employee Director
• Michael Rugen - Director
• Unnamed Independent Director

Mr. Rugen stated, "We started a process at the beginning of the year to explore strategic alternatives that we hoped could maximize the value of Tengasco for our stockholders. We sought a candidate that would provide a solid asset base, proven management, a healthy balance sheet and growth that could be accelerated based upon market conditions. Riley not only meets these objectives but exceeds them in that they have a history of paying a cash dividend to common unitholders that is expected to continue, resulting in our stockholders participating in that dividend going forward. We are confident in the future of Riley and look forward to closing this merger as quickly as possible."

Bobby Riley further stated, "Riley is positioned to be one of a new breed of E&P companies that offers a mix of assets that provides for strong capital efficiency and optionality for our stakeholders. We believe we will not only maintain our

conservative balance sheet, but will improve it over the next year, while maintaining or possibly even increasing our cash dividend over the same period. With our strong hedge position, we are confident heading into the future, and anticipate continued growth, that can be accelerated based upon prevailing market conditions. We believe that providing our stockholders with stockholder friendly policies, along with conservative fiscal management and growth options constitutes the new breed of energy company that the market has been waiting for.".

**II.     The Proxy Omits Material Information**

21.     On November 12, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to TGC's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for TGC's shareholders to make an informed decision in connection with the Proposed Merger.

        A.      The Misleadingly Incomplete Financial Projections

22.     First, the Proxy entirely omits any of the financial projections for TGC, REP, or the pro forma combined company (the "Omitted Projections"). In connection with rendering the fairness opinion and performing its related financial analyses, Roth was provided non-public business information and financial projections for each of TGC and REP prepared by their respective company managements. Proxy at 89, 93. Moreover, the Proxy specifically states that the Board chose to engage with REP based upon the company's growth profile and financial outlook (Proxy at 83); and in listing the reasons the Board supported the Proposed Merger, the Proxy states that the TGC Board made their determination based upon these projections. Proxy at 87. Finally, page 228 of the Proxy states that the pro forma condensed consolidated and combined statements of operations described directly below specifically exclude projected synergies expected to be achieved as a result of the Proposed Merger, and that such projected synergies are

described in the sections entitled "Opinion of Roth Capital Partners, LLC to the TGC Board of Directors" beginning on page 88. However, the Proxy omits the description of the projected synergies or pro forma projections containing the projected synergies.

23. Furthermore, Roth utilized the Omitted Projections in their valuation analyses to support their fairness opinion. Indeed, the Omitted Projections served as the foundation for their *Net Asset Value Analysis*. The failure to disclose the Omitted Projections renders the summary of the analyses provided in the Proxy misleading.

24. The Omitted Projections served as a primary reason for the Board to approve the Proposed Merger and for Roth to find the Merger Consideration "fair" to TGC shareholders. The Omitted Projections are plainly material and speak squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Merger: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Without the Omitted Projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger. Moreover, given that REP is a private company, there is no public financial information for the company or public valuation that TGC shareholders could rely upon. Thus, the omitted financial projections are plainly material to shareholders and must be disclosed.

25. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses valuation information, such information must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis

as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Roth and the Board but have failed to disclose the Omitted Projections. These omissions render the summary of each entity's value and financial picture in the Proxy misleadingly incomplete.

### B. The Misleadingly Incomplete Summary of Roth's Valuation Analyses

26. The Proxy describes Roth's fairness opinion and the various valuation analyses performed in support of their opinion. Defendants concede the materiality of this information by including Roth's fairness opinion and its valuation analyses among the "material" factors considered in recommending the Proposed Merger. Proxy at 86; *see also* Proxy at 90 ("The following is a summary of the material financial analyses delivered by Roth to the TGC board of directors in connection with rendering the opinion described above."). However, the summary of Roth's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, TGC shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Roth's fairness opinion in determining whether to vote in favor of the Proposed Merger. *See* Proxy at 89 ("Accordingly, Roth believes that its analyses must be considered as a whole and that selecting portions of its analyses and the factors considered by it, without considering all of the factors and analyses, would create a misleading view of the processes underlying Roth's opinion."). This omitted information, if disclosed, would significantly alter the total mix of information available to TGC's shareholders.

27. In summarizing the *Comparable Company Analysis*, for each of TGC and REP, and the *Comparable Transaction Analysis* the Proxy fails to disclose the individual multiple of each company and transaction utilized in the analyses. A fair summary of a comparable companies

or transactions analysis requires the disclosure of the individual multiple for each company or transaction used in the analysis. Merely providing a range of the multiples that a banker calculated without further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of these analyses provided in the Proxy misleadingly incomplete.

28. In summarizing the *Net Asset Value Analysis* prepared by Roth for REP, the Proxy fails to disclose the following key information: (i) the cash flows used in the analysis; (ii) the undeveloped acreage value; (iii) net working capital; (iv) net current asset retirement obligations; (v) total debt outstanding; and (vi) the inputs and assumptions underlying the selected discount rates (including WACC/CAPM components).

29. These key inputs are material to TGC shareholders, and their omission renders the summary of the *Net Asset Value Analysis* incomplete and misleading. Professor Davidoff, in an article regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, explained that when bankers perform these types of valuation analyses—including the substantially related discounted cash flow analysis—they take management's forecasts and make several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate …" Id. As he further explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight

assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

30. Without the above-omitted information, particularly the cash flows, the TGC shareholders are misled as to the reasonableness or reliability of Roth's analysis, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Net Asset Value Analysis* included in the Proxy misleadingly incomplete.

C. The Misleadingly Incomplete Summary of the Background of the Merger

31. The Proxy contains a misleadingly incomplete summary of the events leading up to the Proposed Merger that omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

32. First, the Proxy states that Individual Defendant Rugen will become the Chief Financial Officer of the Combined Company and a director of the Combined Company and lists this fact as a "material" factor in recommending that shareholders vote in favor of the Proposed Merger. Yet, the Proxy fails to disclose the timing and nature of the negotiations leading to this determination. Such information is important to shareholders because negotiating for continued employment and Board seats is a conflict of interest that could cause the Individual Defendants to value their own continued involvement in the Company over the value offered to shareholders. Accordingly, the omission and/or partial disclosure of this information renders the summary

provided in the Proxy misleadingly incomplete.

33. Second, the Proxy states that TGC executed 27 non-disclosure agreements during the sales process, but fails to disclose whether such agreements contained a standstill and/or "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. On page 115, however, the Proxy states that TGC shall not "amend or grant any waiver or release under any standstill or similar agreement," indicating that such provisions might be in effect.

34. The express communication of the existence of these provisions is material to TGC shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal. The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. However, if those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the description of the non-disclosure agreements the Company entered into in the Background of the Merger section of the Proxy misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

35. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding

the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

40. Defendants have issued the Proxy with the intention of soliciting TGC's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for TGC, REP, and the pro forma combined

company; (ii) Roth's valuation analyses performed in support of its fairness opinion; and (iii) the background of the Proposed Merger.

41.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to TGC's shareholders, though they could have done so without extraordinary effort.

42.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that Roth reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Roth, as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete.  Indeed, the Individual Defendants were required to review Roth's analyses in connection with their receipt of the fairness opinion, question Roth as to their

derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as TGC's officers and directors.

44.     TGC is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

45.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of TGC's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of TGC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of TGC, and participation in and/or awareness of TGC's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of TGC, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TGC, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Merger.

50. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.   Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
### Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure

54.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.   By virtue of their role as directors or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

56.   As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

57.   The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

58.   Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable

injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 8, 2020

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
John Baylet (JB-6725)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
jbaylet@monteverdelaw.com

*Attorneys for Plaintiff*